## TOM. BOSTICK *v.* THE STATE.

1. EVIDENCE — IMPEACHMENT OF WITNESS.— There is no rule of law which requires that the question put to the impeaching witness shall be in the exact and precise language of that put to the witness sought to be impeached. If the predicate has been properly laid, it is sufficient if the question is germane and pertinent to the fact in regard to which the witness sought to be impeached had been questioned.

2. CONTINUANCE.— See the opinion for state of case wherein the defendant should have been awarded a postponement to procure the testimony of an absent witness, notwithstanding the desired testimony would have been cumulative.

3. NEW TRIAL.— The motion for a new trial was supported by an affidavit setting out that, immediately after the verdict was rendered against the defendant, the affiant saw the prosecuting witness take another witness who had testified for the State, aside, and secretly give her five dollars in money. This affidavit was not controverted either by the prosecuting witness or by the witness charged to have been bribed. *Held,* that the new trial asked should have been awarded.

APPEAL from the District Court of Colorado. Tried below before the Hon. E. LEWIS.

The opinion sufficiently discloses the case.

*W. S. Delany,* for the appellant.

*H. Chilton,* Assistant Attorney General, for the State.

HURT, J.   Bostick, the appellant, was convicted of arson, with ten years' confinement in the penitentiary asse      as punishment.

By one Foster, the State proved that the defendant was standing near the fire when it was first starting; that he did not cry "fire," and that in a short time he walked off up the street north, in the opposite direction from witness. This was the strongest, most pertinent and pointed evidence adduced against the defendant upon the trial. Upon cross-examination this witness was asked if she

had not stated on the day following the fire, that she knew nothing of the origin of the fire. This she denied. The predicate was properly laid in every particular. An impeaching witness was introduced by defendant, and after his attention had been called to the time, place, and presence, he was asked "if he heard her (naming Foster) say anything about the origin of the fire at the time and place, and if so, what did she say?" To this counsel for the State objected upon the ground that the question was not a proper one, but that "*the question* put to the impeaching witness should be *directly* in the words of the question put to the witness sought to be impeached, and which she had denied." The court sustained the objection, and the defendant reserved his bill.

In this we think there was error. We are not aware of any rule of evidence which requires the question to the impeaching witness to be precisely in the same words of the question propounded to, and denied by, the witness sought to be impeached. This was certainly germane and pertinent to the fact in regard to which she had been interrogated, when laying the predicate for her impeachment. There was no objection to the predicate. The only objection was that the exact language of the first question was not used. The objection to this question was not well taken, and the court erred in sustaining it.

The defendant proved that, at the time of the alarm of fire, he was at his mother's house, which was about 800 yards from the fire. This proof was made by his mother, a colored woman. When the cause was called for trial, defendant moved the court to postpone the trial to a future time of the term, on account of the absence of Mrs. S. Smith, a white lady who lived about three miles from town. The motion showed that Mrs. Smith was detained at her home on account of the sickness of her infant child, which sickness the defendant stated to be temporary. The defendant expected to prove by Mrs.

Smith "that when the alarm of fire was given, it awakened her, witness, and she went to the house of this defendant's mother for protection, in which house defendant was living; that she lived just across the street from said house, and about 800 yards from the fire; that when she went into the room, this defendant's mother was there, and some one was lying on the floor asleep; that she asked defendant's mother who the person was, and she said it was "Tom," meaning defendant. Mrs. Smith had been subpœnaed, and there is no doubt that the sickness of her infant child was the cause of her non-attendance upon the court. Taken in connection with the other evidence, the facts sought to be established by her were material to the defense. It is true it is cumulative, but this fact had been sworn to by his mother. We will not attempt to disguise the fact that a witness occupying this position and relation will not be believed by the juries of the country as readily as when not so situated. We are of the opinion that the trial should have been postponed, especially when her evidence is read in contrast with that of the witness Foster.

There is another error which is fatal to the idea that the trial of defendant was without taint. In the motion for new trial the following affidavit is found: "B. F. Anderson, who being by me duly sworn, says: that, immediately after the verdict against defendant in the above case was brought in, he saw Wm. Munch (the prosecutor) take the witness Angelina Goodman aside, and secretly slip a five dollar bill into her hand, and said Munch had in his hand a considerable amount of money." By this witness, Angelina Goodman, the State proved that defendant had seriously threatened, not only to kill Munch, the owner of the house burned, but to burn him up in his house. In the counter-affidavits of Anderson, procured by the State, he corrects himself and states that the money was given to the witness who swore that the

defendant was near the fire when it began, meaning evidently the witness Foster. The motion for new trial alleges that the witness had been bribed by Munch. Anderson's affidavit was filed to prove the charge. The money was given to the witness under very suspicious circumstances, and if not as a bribe, the State had it in her power to prove it. This was not done. Neither the affidavit of Foster nor Munch was procured. Again, if not a corrupt transaction, Munch would have sought — earnestly sought — the opportunity to either deny or explain this matter; for no honest man could rest contentedly under such a charge thus supported. If Munch was not informed of the charge, the county attorney was, and no person knew better the importance of proving the counter-affidavit of Munch than he did.

Taking all of the facts surrounding this transaction into consideration, we are not willing that this judgment should stand. We think the court should have granted the defendant a new trial. The judgment of the court below is reversed and the cause remanded for a new trial.

*Reversed and remanded.*